# EXHIBIT 1

# GENERAL AT-WILL EMPLOYMENT AGREEMENT

THIS AGREEMENT ["Agreement"] made this 6th day of November, 1998, between Broin Management, LLC, with its principal place of business at 25784 Cottonwood Ave, Sioux Falls, SD 57107 ("Employer'), and Anthony Simpson, whose residence address is 4324 Wentworth Avenue South, Minneapolis, MN 55409 ("Employee").

## RECITALS

WHEREAS the Employer is engaged in the business of management and operation of Ethanol Production Facilities ; and

WHEREAS the Employee is skilled in Management in General; and

WHEREAS the Employer wishes to employ the Employee as its General Manager of the EXOL plant located near Albert Lea, Minnesota; and

WHEREAS the Employee wishes to be employed by the Employer as its General Manager.

## AGREEMENT

NOW, THEREFORE, the parties agree as follows:

**1.0 Job Responsibilities**

**1.1 Place of Employment/Duties**

Employer employs the Employee to perform all General Management services at the EXOL plant located near Albert Lea, MN as directed by the C.E.O. of Broin Management, LLC.

**1.2 Management Agreement**

Employee will also perform any and all duties and obligations contained in the Management Agreement (Exhibit A, herein incorporated by reference) between EXOL and Broin Management, LLC.

**1.3 Employee Diligence**

During employment, the Employee shall use all diligence to make and keep the Employer's trade, to faithfully work for the Employer, and to promptly do and perform any and all things pertaining to the Employer's business as may be directed by the C.E.O. of Broin Management, LLC.

**2.0 Compensation and Benefits**

Effective on the date this Agreement is signed, the Employee shall be initially entitled to receive the following compensation and benefits:

### 2.1 Salary

The Employer hereby agrees to pay the Employee a base salary of $70,000 per year, so long as the Employee remains in the employment of the Employer, payable in approximately equal installments on a twice-monthly basis.

### 2.2 Annual Bonus Incentive

In addition to the base salary as noted in 2.1 above and provided that Employee remains an employee of Employer on September 30, 1999, Employee will be paid one half of one percent (.5%) of the annual "Net Income" of EXOL for the year ended September 30, 1999 and for each year thereafter provided Employee is still employed at the end of each respective year. Net Income will equal the Net Income of EXOL as determined using generally accepted accounting principles consistently applied and approved by the Board of Directors of Agra Resources Cooperative d.b.a EXOL and the Board of Directors of Broin Management, LLC. Any amounts required to be paid for the bonus incentive shall be paid on or before the 105th day following the end of each respective fiscal year.

### 2.3 Vacation

The Employee shall receive ten (10) paid working days of vacation per year, commencing during the first year of employment. Following the completion of the first year of employment, 1 day of vacation will be added to the 10 days each year until a total of 15 days vacation is reached.

### 2.4 Expense Reimbursement

Any travel and related expenses authorized by Employer will be reimbursed by Employer upon presentation of documentation reasonably satisfactory to the Employer.

### 2.5 Additional Benefits

Employee shall be entitled to receive such other benefits similar to those provided to other employees of Employer.

## 3.0 Severability

If for any reason, any section or portion of this Agreement shall be held by a court of competent jurisdiction to be invalid or unenforceable, it is agreed that this shall not affect any other section or portion of this Agreement's enforceability.

## 4.0 At-Will Employment/Termination

THE EMPLOYEE AND EMPLOYER ACKNOWLEDGE AND AGREE THAT THE EMPLOYMENT RELATIONSHIP BETWEEN THE EMPLOYER AND EMPLOYEE IS STRICTLY "AT-WILL." EITHER THE EMPLOYEE OR THE EMPLOYER MAY AT ANY TIME, FOR ANY OR NO REASON, WITH OR WITHOUT NOTICE, TERMINATE THIS AGREEMENT, EXCEPT THAT SECTION 5.0 OF THIS AGREEMENT (COMPETING EMPLOYMENT) SHALL SURVIVE AND REMAIN FULLY ENFORCEABLE ACCORDING TO ITS TERMS.

## 5.0 Competing Employment

### 5.1 Non-solicitation

(a) For a period of three years after this Agreement has been terminated for any reason, with or without cause, the Employee shall not directly or indirectly solicit or sell any of the Employer's products, product descriptions, technical specifications, trade secrets or other matters belonging to Employer, which Employer, in its sole discretion, deems confidential, to any person, company, firm, or corporation who is or was the Employers customer, vendor, consultant, or competitor within three years prior to the Employee's employment termination. The Employee agrees not to solicit these customers on behalf of himself or any other person, firm, company, or corporation.

(b) The Employee shall not, at any time during the course of employment, and for three years from the date of termination of this Agreement, directly or indirectly, induce, or attempt to influence, any employee of the Employer or its affiliates to terminate employment with the Employer or its affiliates or to enter into any employment or other business relationship with any other person (including the Employee), firm, or corporation.

(c) This Article shall survive the Employee's termination of employment by Employer.

### 5.2 Confidentiality

The Employee shall not, except as required by court order or law, during the term of this Agreement and for a period of three (3) years after the termination of the Agreement, disclose the terms of this Agreement, disclose any secret or confidential technology, proprietary information, customer lists, or trade secrets of the Employer, or any matter or thing ascertained by the Employee through the Employee's association with the Employer, the use or disclosure of which might reasonably be construed to be contrary to the best interest of the Employer; provided, however, the Employee may reasonably disclose such items to Employee's legal and tax advisors. Employee further agrees that should this Agreement terminate, Employee will neither take nor retain any papers, customers lists, records, files, computer programs and software, other documents or copies thereof, or other confidential information of any kind belonging to the Employer. Without limiting other possible remedies to Employer for the breach of this Article, Employer agrees that injunctive or other equitable relief shall be available to enforce this covenant, such relief to be without the necessity of the Employer posting a bond.

### 5.3 Agreement Not to Compete

The Employee shall not, during his or her employment with Employer and for a period of three (3) years after the termination of this Agreement, directly or indirectly, engage in the same or a similar business to that of the Employer within the United States of America. Without limiting any other remedies available to the Employer to enforce this Article, the Employee agrees that an injunction or other

equitable relief shall be available without the necessity of the Employer posting a bond.

### 5.5 Ability to Earn Livelihood

The Employee further acknowledges that if employment with the Employer terminates for any reason, or for no reason, the Employee can earn a livelihood without violating the foregoing restrictions and that the Employee's ability to earn a livelihood without violating these restrictions is a material employment condition.

### 5.6 Employer's Remedies

The Employee acknowledges that compliance with these restrictions is necessary to protect the Employer's business and goodwill and that a breach shall irreparably and continually damage the Employer, for which money damages may not be adequate. Consequently, if the Employee breaches or threatens to breach any of these covenants, the Employer shall be entitled to a preliminary or permanent injunction to prevent the continuation of this harm and money damages. Money damages shall include the Employers right to recover fees, compensation, or other remuneration earned by the Employee as a result of any breach. Nothing in this Agreement shall be construed to prohibit the Employer from also pursuing any other remedy.

## 6.0 Successors and Assigns

This Agreement shall be binding upon and inure to the benefit of the Employer and the Employee and their respective heirs, legal representatives, executors, administrators, successors and assigns; provided, however, that neither party may assign nor delegate any of its rights or obligations hereunder without first obtaining the written consent of the other party.

## 7.0 Entire Agreement

This Agreement constitutes the entire agreement between the parties and there are no other oral or written agreements, understandings, restrictions, warranties, or other representations between the parties relating to this subject matter other than those set forth. This Agreement supersedes all prior agreements, understandings, discussions, or negotiations relating to this subject matter.

## 8.0 Applicable Law

This Agreement, the construction of its terms, and the interpretation of the parties' rights and duties shall be governed by and construed under the law of Minnesota.

## 9.0 Captions

The captions are provided for convenience and are not to be used in construing this Agreement.

## 10.0 Modifications

No modification of this Agreement shall be valid unless such modifications are in writing and signed by the party whom charged.

## 11.0 Waiver

Any failure of the Employer to demand rigid adherence by the Employee to one or more of this Agreement's terms, on one or more occasions, shall not be construed as a waiver nor deprive the Employer of the right to insist upon strict compliance with this Agreement. No waiver of any provision of this Agreement shall be valid unless in writing and signed by the person or party against whom charged.

## 12.0 Notices

Any notice given in connection with this Agreement shall be given in writing and delivered either by hand to the party or by certified mail, return receipt requested, or by fax to the party at the party's address stated herein. Either party may change its address stated herein by giving notice of the change in accordance with this paragraph.

IN WITNESS WHEREOF, the parties have signed this Agreement, the day and year first above written.

**Broin Management, LLC**
(EMPLOYER)

By: _____
Jeff Broin

Its: _C.E.O._____

(EMPLOYEE)

By: _____
Anthony Simpson

Attest: _____